

# SUPREME COURT OF MISSOURI
## en banc

CASS COUNTY CLERK JEFF FLETCHER, )
)
    Respondent, )
)
v. )     No. SC100594
)
HERSCHEL YOUNG, )
)
    Appellant. )

*Opinion issued June 10, 2024*

## APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY
The Honorable Charles H. McKenzie, Judge

Respondent Jeff Fletcher, in his official capacity as Cass County clerk ("Clerk"), filed a petition in the circuit court seeking a declaratory judgment as to whether Herschel Young is qualified to be a candidate for elective public office in the state of Missouri and eligible to be placed on the ballot at the primary election to be held August 6, 2024. The circuit court determined Young is not a qualified candidate for elective public office and ineligible to be on the primary election ballot under Missouri law because he previously pleaded guilty to a felony, notwithstanding a gubernatorial pardon of Young's felony conviction. Finding no error, this Court affirms.

**Factual and Procedural Background**

In 1995, Herschel Young pleaded guilty to assault in the second degree, a class C felony, in Cass County, Missouri, and was sentenced to one year imprisonment. The circuit court suspended execution of his sentence and placed him on probation for three years. Young successfully completed his probation. In 2023, the governor granted Young a pardon from the 1995 conviction.

On February 27, 2024, Young submitted a declaration of candidacy to Clerk, announcing himself as a candidate for the south district commissioner of Cass County at the primary election to be held on August 6, 2024. The Clerk informed Young his name would not appear on the ballot because the "pardon does not resolve a disqualification under section 115.306."[1] Young requested reconsideration of Clerk's decision. Clerk thereafter filed a petition in the circuit court alleging Young pleaded guilty to the 1995 felony and seeking a declaratory judgment as to whether Young is qualified to be a candidate for elective public office in the state of Missouri and eligible to be placed on the primary election ballot. Young filed an answer asserting he received a pardon for the 1995 conviction, therefore, he did not contest that he pleaded guilty and was found guilty of this offense. Both Clerk and Young moved for judgment on the pleadings. Relying on section 115.306.1 and Missouri case law, the circuit court entered judgment on the pleadings and determined Young is not a qualified candidate for elective public office and ineligible to

---

[1] All references to section 115.306 are to RSMo Supp. 2023. All other statutory references are to RSMo 2016 unless otherwise indicated.

be placed on the ballot because he previously pleaded guilty to the 1995 felony, notwithstanding the governor's pardon of Young's conviction of that offense.[2]

Young appeals, raising three separate claims. First, Young contends section 115.306.1 is unconstitutional as applied by the circuit court because it curtails the pardon power vested in the governor under the Missouri Constitution. Second, Young argues section 115.306.1 does not operate to disqualify from public office an individual who has pleaded guilty to a felony offense and is later pardoned for a conviction of the offense. Finally, Young contends section 115.306.1 as applied to him violates his right to equal protection under the laws.[3]

---

[2] This is not Young's first attempted foray into public office. Before being pardoned, Young was elected presiding commissioner of Cass County, and the circuit court entered judgment in 2011 ousting him from office due to his criminal history. This Court affirmed on appeal. *See State v. Young*, 362 S.W.3d 386 (Mo. banc 2012).

[3] Because Young alleges section 115.306.1 is unconstitutional, this Court has jurisdiction over Young's appeal under article V, section 3 of the Missouri Constitution. As the concurring and dissenting opinions note, Rule 87.04 requires notice to the attorney general in actions for declaratory judgment that challenge the constitutional validity of a statute. The separate opinions raise valid concerns about compliance with Rule 87.04 in this case. Nonetheless, there is precedent for deciding an appeal when the Rule 87.04 notice requirement to the attorney general was not followed by the parties. *See Land Clearance for Redevelopment Auth. of City of St. Louis v. City of St. Louis*, 270 S.W.2d 58, 64 (Mo. banc 1954). Moreover, it does not appear based on the record in this case that the State of Missouri is prejudiced by the lack of compliance with Rule 87.04. The circuit court determined section 115.306.1 is not unconstitutional as applied to Young, and this Court affirms this ruling. In fact, the Court's three opinions each result in Young left off the primary election ballot as the circuit court decided. *See* Rule 84.13(b) ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.").

3

## Standard of Review

> When reviewing a declaratory judgment, our standard of review is the same as in any other court-tried case. This Court will affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

*Fay v. Stephenson*, 552 S.W.3d 753, 756 (Mo. App. 2018) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Questions of law, including those of statutory and constitutional interpretation, are reviewed *de novo.*" *Id.* (internal quotation omitted); *see also Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 67 (Mo. banc 2018).

## Analysis[4]

### *Section 115.306.1 disqualifies Young from elective public office*

Young's first point relied on argues the circuit court's decision failed to give full effect to the gubernatorial pardon he received in 2016. This argument fails because the statute on which the circuit court relied, section 115.306.1, does not implicate the pardon power of the governor. Article IV, section 7 of the Missouri Constitution provides:

> The governor shall have power to grant reprieves, commutations and pardons, after **conviction**, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. The power to pardon shall not include the power to parole.

(Emphasis added).

Section 115.306.1 provides:

---

[4] Substantial portions of this Court's opinion are adopted without further attribution from the court of appeals' opinion in *Fay*, 552 S.W.3d 753.

4

> No person shall qualify as a candidate for elective public office in the state of Missouri who has been **found guilty of or pled guilty to** a felony under the federal laws of the United States of America or to a felony under the laws of this state or an offense committed in another state that would be considered a felony in this state.

(Emphasis added).

Young contends section 115.306.1 as applied by the circuit court presents an unconstitutional limitation on the governor's pardon power. But as this Court's previous holdings make clear, although Young's pardon extinguished the fact of his felony conviction, it did not erase the fact he had pleaded guilty to a felony offense. Because section 115.306.1 is triggered by the fact of a felony guilty plea, rather than by the fact of a felony conviction, the statute operates to disqualify Young from office, despite his pardon.

The first decision dictating the result here is *Guastello v. Department of Liquor Control*, 536 S.W.2d 21 (Mo. banc 1976). Guastello, an applicant for a liquor license, had pleaded guilty to two charges of selling intoxicating liquor on a Sunday. *Id.* at 22. Guastello later received a full gubernatorial pardon. *Id.* The statute involved in *Guastello* disqualified applicants from receiving a liquor license based on "(1) lack of good moral character, or (2) a **conviction** under a liquor law." *Id.* (emphasis added). Although Guastello was initially able to obtain a liquor license, his application for renewal was denied based on the second factor—his prior convictions for selling alcohol on Sunday. *Id.*

The Court noted courts in other jurisdictions had adopted three different approaches concerning the effect of an executive pardon:

5

View #1 is that conviction and guilt are both wiped out and obliterated. Thus, it makes the offender as if he had not committed the offense in the first place.

View #2 is that the fact of conviction is obliterated but the guilt remains. Under this view, if disqualification is based solely on the fact of conviction the eligibility of the offender is restored. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified—merely as a result of the pardon.

View #3 is that neither the fact of conviction nor the guilt are obliterated— only the punishment. Under this view, a pardon would have no effect whatsoever on disqualification statutes like that in question. The sole effect would be to excuse any portion of the punishment not then suffered—plus, perhaps, removal of certain 'civil disabilities.'

*Id.* at 23 (footnotes omitted).

The Court in *Guastello* chose to follow the second approach, under which "the fact of conviction is obliterated but the guilt remains." Under this rule,

if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.

*Id.* at 24 (internal quotation omitted). Because Guastello's prior convictions had been "obliterated" by his pardon, the Court held, he could not be denied a liquor license based solely on the fact of those prior convictions. *Id.* at 24-25.

In *Hill v. Boyer*, 480 S.W.3d 311 (Mo. banc 2016), this Court interpreted *Guastello* to hold that, if a statute disqualifies an individual based on the fact of a guilty plea, rather than the fact of conviction, a gubernatorial pardon does not remove the disability. Hill, a 2013 applicant for a concealed-carry firearms permit, had pleaded guilty in 1973 to felony forgery. *Id.* at 313. Hill was sentenced to a two-year term of imprisonment in the forgery

case, but the court suspended execution of his sentence and placed him on probation for two years. *Id.* Hill successfully completed his probation. *Id.* Under section 549.111.2, RSMo 1969, Hill's successful completion of probation "restored [to him] all the rights and privileges of citizenship." *Id.* Hill applied for a concealed-carry permit, but the application was denied under section 571.101.2(3), which renders ineligible any person who has "pled guilty to . . . a crime punishable by imprisonment for a term exceeding one year[.]" *Id.*

Hill argued that, under *Guastello*, the "statutory restoration of rights [under section 549.111.2, RSMo 1969] is legally equivalent to a governor's pardon" and should have "the effect of negating the fact of his prior conviction." *Id.* at 314. This Court disagreed. Even assuming Hill's completion of his probation was the equivalent of a gubernatorial pardon, the Court held a pardon does not erase the fact an individual has previously pleaded guilty to a criminal offense.

> Mr. Hill's case is materially distinguishable from *Guastello*. The statute at issue in *Guastello* disqualified applicants based solely on the existence of a prior conviction. In contrast, section 571.101.2(3) bars a sheriff from issuing a concealed carry permit to individuals who "pled guilty to" or were convicted of an offense with an authorized punishment of more than one year of imprisonment. The *Guastello* Court recognized the distinction between disqualifying an applicant based on the existence of a prior conviction as opposed to the fact of a prior guilty plea:
>
> > [I]f disqualification is based solely on the fact of conviction the eligibility of the offender is restored. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified—merely as a result of the pardon.
>
> [536 S.W.2d] at 23. Even if this Court assumes for the sake of argument that Mr. Hill's statutory restoration of rights "obliterated" the fact of his prior conviction, the fact that he pleaded guilty is not negated because "*Guastello* held only that the fact of conviction was obliterated and not the fact of guilt."

7

*State v. Bachman*, 675 S.W.2d 41, 51 (Mo. App. 1984). Therefore, "an offender's conviction (pertaining to guilt as opposed to the mere conviction) [can] be considered and used in future determinations involving an offender." *Id.*

*Hill*, 480 S.W.3d at 314-15 (second alteration in original).

As held in *Guastello* and *Hill*, Missouri courts have repeatedly distinguished between a conviction and the fact of guilt, holding a pardon obliterates a conviction but does not implicate the fact of guilt. *See, e.g.*, *State v. Jacobson*, 152 S.W.2d 1061, 1064 (Mo. 1941); *McCloskey v. State*, 683 S.W.3d 702 (Mo. App. 2023); *Townsend v. Jefferson Cnty. Sheriff's Dep't*, 602 S.W.3d 262, 266 n.8 (Mo. App. 2020); *Fay*, 552 S.W.3d 753; *Stallsworth v. Sheriff of Jackson Cnty.*, 491 S.W.3d 657 (Mo. App. 2016); *Bachman*, 675 S.W.2d 41. The legislature has clearly set forth in section 115.306.1 that any individual who has pleaded guilty to a felony offense under Missouri law is disqualified to be a candidate for elective public office in the state, and Young has indisputably pleaded guilty to a felony offense under Missouri law.

Pursuant to its legislative authority, the legislature is authorized to set the qualifications for elective public office not otherwise governed by constitutional provisions. *Labor's Educ. & Pol. Club-Indep. v. Danforth*, 561 S.W.2d 339, 345 (Mo. banc 1977). Exercising this authority, the legislature enacted section 115.306.1. The legislature chose to use the phrase "found guilty of or pled guilty to" rather than using the term "conviction," illustrating the legislature's intent to broaden the disqualifications for

8

elective public office beyond conviction of an offense.[5]  This Court must follow the clear intent of the legislature based on the words used in a statute.  *Kearney Special Rd. Dist. v. Cnty. of Clay*, 863 S.W.2d 841, 842 (Mo. banc 1993).  Moreover, the legislature chose not to amend section 115.306.1 following the multiple cases from our appellate courts holding that a governor's pardon excuses merely a conviction, not a finding of guilt or plea of guilt.  *C.f. Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 712-13 (Mo. banc 2015) (citing legislative inaction as evidence of approval of court decision); *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 669 n.11 (Mo. banc 2009) (holding "[legislative] inaction can be considered" as evidence of legislative approval).  For all these reasons, the circuit court properly interpreted section 115.306.1 and found Young's pardon for his 1995 conviction does not eradicate the fact he pleaded guilty to the offense.  Accordingly, point one is denied.

For these same reasons, Young's second point relied on also lacks merit.  He argues section 115.306.1 does not encompass individuals pleading guilty to a felony offense and later receiving a gubernatorial pardon for a conviction of the offense.  Instead, Young

---

[5] The legislature recognizes the important distinction between a conviction and a finding or plea of guilt.  Some statutes create disabilities based solely on a conviction, *see, e.g.*, section 494.425(4) (juror disqualification); section 571.070.1(1), RSMo Supp. 2023 (firearm possession); other statutes create disabilities based on either a conviction or a plea or finding of guilt, *see, e.g.*, section 319.306.4(5) (blaster's license); section 443.713(2) (mortgage loan originator license); section 217.362.1, RSMo Supp. 2023 (substance-abuse program); section 491.050 (witness credibility); and other statutes create disabilities based on the fact of guilt, regardless if the guilt results in a conviction, *see, e.g.*, section 376.1015(2) (denying approval of a financial plan if "any trustee has been found guilty of, or has pled guilty or no contest to a felony").  Section 558.016 also distinguishes between guilt and conviction, defining prior, persistent, and dangerous offenders to include those defendants who previously have been found guilty of a felony, even absent conviction.

suggests, section 115.306.1 merely specifies that even those who plead guilty or are found guilty of a felony offense and receive a suspended imposition of sentence, but are never convicted, nevertheless are disqualified from public office—without saying anything about the effect of a pardon. Moreover, Young contends, *Hill* misinterpreted *Guastello* in equating a guilty plea with the fact of guilt or immoral character. It is only the latter, immoral character, that *Guastello* held may be considered by decisionmakers in determining certain legal disqualifications following a pardon.

These arguments fail because the legislature *has* determined in section 115.306.1 that a plea of guilt is sufficient to disqualify an individual from holding elective public office. A plea of guilt demonstrates the fact of guilt, as *Hill* correctly determined, and the law is well-settled that a pardon does not erase the fact of an offender's guilt in committing an offense. *Guastello*, 536 S.W.2d at 23-24; *Hill*, 480 S.W.3d at 314-15; *Jacobson*, 152 S.W.2d at 1064; *McCloskey*, 683 S.W.3d 702; *Townsend*, 602 S.W.3d at 266 n.8; *Fay*, 552 S.W.3d 753; *Stallsworth*, 491 S.W.3d 657; *Bachman*, 675 S.W.2d 41.

This Court recognizes interpreting section 115.306.1 in this manner may seem unfair to those individuals who committed offenses in their formative years and have gone decades since with a perfect record, even receiving a pardon for their earlier missteps. While this Court is not blind to the potential harshness of section 115.306.1, it is up to the legislature, not this Court, to determine the qualifications for public office. The legislature has the constitutional authority to decide who is qualified to serve in elective public office, and this Court must uphold the law as written. Section 115.306.1 clearly disqualifies

10

Young from holding elective public office because he formerly pleaded guilty to a felony offense. Accordingly, point two is denied.

### *Young failed to preserve his equal protection violation claim*

In his third point relied on, Young argues section 115.306.1 violates the equal protection clauses of the Fourteenth Amendment of the United States Constitution and article I, section 2 of the Missouri Constitution by treating him differently from other qualified candidates for public office. Young made a similar equal protection argument in his previous case before the Court. *See Young*, 362 S.W.3d 386. In that case, Young claimed the precursor to section 115.306 treated similarly situated persons differently by preventing felons convicted in Missouri from running for office but allowing felons convicted in other jurisdictions to seek election. *Id.* at 396. In addressing Young's claim, this Court set forth the constitutional backdrop of the equal protection provisions:

> The [Fourteenth Amendment to the] United States Constitution provides, "No state shall deny to any person within its jurisdiction the equal protection of the laws." Article I, section 2 of the Missouri Constitution provides in pertinent part, "All persons are created equal and are entitled to equal rights and opportunity under the law." Missouri's equal protection clause provides the same protections as the United States Constitution.

> In deciding whether a statute violates equal protection, this Court engages in a two-part analysis. First, the Court determines whether a classification of certain persons under the law "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." If so, the classification is subject to strict scrutiny, and this Court must determine whether the classification is necessary to accomplish a compelling state interest.

> Suspect classes are classes such as race, national origin, or illegitimacy that "command extraordinary protection from the majoritarian political process" for historical reasons.

11

*Id.* at 396-97 (alterations and internal citations omitted).

Young seems to suggest section 115.306.1 implicates equal protection in that, as interpreted by the circuit court, it creates a distinction between those who have received a pardon after having been convicted of a felony after a guilty plea and those who have been convicted of a felony after a trial verdict. Young's argument is misconceived. Section 115.306.1 clearly applies to both those who have "been found guilty of or pled guilty to a felony[.]" Regardless, this argument is not properly preserved.

> To preserve a constitutional claim for review, appellants must:
>
> (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Faatz v. Ashcroft*, 685 S.W.3d 388, 398 (Mo. banc 2024) (internal quotation omitted).

In his answer to Clerk's petition, Young cited the equal protection provision of the United States Constitution but failed to explain how section 115.306.1 as applied to him deprived him of the equal protection of the laws by creating a classification operating to the disadvantage of a suspect class to which Young belonged or by impinging upon his fundamental rights. *C.f. Young*, 362 S.W.3d at 397. Because Young failed to "state the facts showing the [constitutional] violation," he failed to preserve his constitutional claim for review. *Faatz*, 685 S.W.3d at 398. Moreover, Young failed to "preserve the constitutional question throughout" by failing to raise the equal protection claim in his motion for judgment on the pleadings or in his suggestions in opposition to Clerk's motion for judgment on the pleadings. *See id.* Even in his briefing before this Court, as discussed

above, it is difficult to decipher how Young claims section 115.306.1 creates any classification at all. Accordingly, Young's equal protection claim is not preserved for appellate review.[6]

**Conclusion**

In section 115.306.1, the legislature has determined anyone who has pleaded guilty to a felony offense under Missouri law is disqualified from holding elective public office.

---

[6] Young's claim would fail even were it properly preserved. As this Court found in Young's prior appeal, section 115.306.1 does not create a classification as it applies to all persons who have been found guilty of or pleaded guilty to a felony under Missouri law, and it does not impinge upon a fundamental right as the right to run for office is not a fundamental right. *C.f. Young*, 362 S.W.3d at 397.

Because section 115.306 does not operate to the disadvantage of a suspect class nor impinge upon a fundamental right, "it will withstand constitutional challenge if the classification bears some rational relationship to a legitimate state purpose." *Id.* As held in Young's prior appeal, disqualifying those guilty of a felony under Missouri law has a rational basis under the law. *Id.* The Court explained:

> The public is entitled to the service of public officials who are of the highest character. It is of paramount importance to the people to have confidence in the honor and integrity of public officials. Society expects much from its public officials and rightly so. The public interest demands that public affairs be administered by officers upon whom rests no stigma of conviction of a felony.

> The State has a legitimate interest in maintaining the public's confidence in the honesty and integrity of their elected officials. This interest is promoted by disqualifying those individuals who have demonstrated an inability to follow the laws of this state.

*Id.* at 397-98 (internal quotation omitted). Because there is a rational basis for excluding those who have pleaded guilty to a felony from public office as provided in section 115.306.1, Young's equal protection claim would have been denied even if it were properly preserved.

Accordingly, this Court affirms the circuit court's judgment declaring Herschel Young unqualified to be a candidate for elective public office in the state of Missouri and ineligible to be on the primary election ballot for the election to be held on August 6, 2024.[7]

 

_____

W. Brent Powell, Judge

Russell, C.J., Wilson, Broniec and Gooch, JJ., concur;
Fischer, J., concurs in result only in separate opinion
filed; and Ransom, J., dissents in separate opinion filed.

---

[7] Given the time constraints of the upcoming election, no Rule 84.17 motions shall be filed in this matter, and the clerk of this Court is instructed to issue the mandate immediately.



# SUPREME COURT OF MISSOURI
## en banc

CASS COUNTY CLERK JEFF )
FLETCHER, )
)
    Respondent, )
)
v. ) No. SC100594
)
HERSCHEL YOUNG, )
)
    Appellant. )

OPINION CONCURRING IN RESULT ONLY

I concur in the principal opinion's result to affirm the judgment but write separately

to address Rule 87.04. Rule 87.04 provides:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and, ***if the statute, ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard***.

(Emphasis added).

"In actions for declaratory judgment that challenge the constitutionality of a statute,

our law follows the general rule that notice to the Attorney General is mandatory."

*Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 507 (Mo. banc 1991). As the

principal opinion notes, and as Respondent argues, Rule 87.04 applies because the underlying declaratory judgment action requires resolution of Young's allegation that§ 115.306.1, RSMo Supp. 2023, is unconstitutional. Although Rule 87.04 applies, the record shows the attorney general was not served with a copy of the proceeding. The importance of complying with Rule 87.04 is not an arbitrary, technical requirement. To the contrary, it is an essential aspect of a declaratory judgment action challenging the constitutionality of a state statute because, absent the required notice, the attorney general is deprived of the opportunity to "answer or defend, in any proceeding or tribunal in which the state's interests are involved." Section 27.060, RSMo 2016. The failure to serve the attorney general with the required notice is a sufficient basis to affirm the circuit court's judgment upholding the constitutional validity of § 115.306.1.[1]

This Court's opinion in *Land Clearance for Redevelopment Authority of City of St. Louis v. City of St. Louis*, 270 S.W.2d 58 (Mo. 1954), does not require this Court to ignore Rule 87.04. In *Land Clearance*, an intervening party's answer to a declaratory judgment petition alleged a state statute was unconstitutional. *Id*. at 63. As in this case, the record was "silent as to any notice having been given to the Attorney General" even

---

[1] The constitution authorizes this Court to determine the validity of state statues. Mo. Const. art. V, § 3. This Court's exercise of its power to determine the constitutional validity of a state statute, however, must respect the General Assembly's exclusive legislative authority under article III, section 1 of the Missouri Constitution. Accordingly, "for decades, and for prudential reasons, this Court has held fast to the principle that a court will avoid the decision of a constitutional question if the case can be fully determined without reaching it." *Hink v. Helfrich*, 545 S.W.3d 335, 343 (Mo. banc 2018) (alteration and internal quotation omitted). This case can and should be fully determined by affirming the circuit court's decision due to the failure to comply with the mandatory provisions of Rule 87.04.

2

though the constitutional validity of a state statute was at issue. *Id*. And, like in this case, the circuit court's judgment did not declare the statute at issue unconstitutional. *Id*. at 65. In this context, this Court observed, without further explanation, that "inasmuch as none of the parties has raised any objection to the failure to serve the Attorney General with notice of this action, we will determine the issues presented by the intervenor as between it and the plaintiff and the City." *Id*. at 64. Because the circuit court did not declare the statute unconstitutional, there is no basis for concluding the failure to serve notice to the Attorney General prejudiced the State's interest. The judgment should be affirmed. Rule 84.13(b).

For these reasons, I concur in the result of the principal opinion.

_____
Zel M. Fischer, Judge

3



# SUPREME COURT OF MISSOURI
## en banc

CASS COUNTY CLERK )
JEFF FLETCHER, )
    )
  Respondent, )
    )
v. )   No. SC100594
    )
HERSCHEL YOUNG, )
    )
  Appellant. )


### DISSENTING OPINION

I respectfully dissent. Because there was not compliance with Rule 87.04 in the circuit court, I would reverse and remand to the circuit court to permit notice to the Attorney General to allow the challenge to the constitutional validity of section 115.306.1, RSMo Supp. 2023, to proceed. Without the required notice to the attorney general, I do not believe this Court should be able to reach arguments touching upon the constitutional validity of the statute in an appeal.

When declaratory relief is sought and a statute is alleged to be unconstitutional, Rule 87.04 requires that "the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard." *See also* section 527.110, RSMo 2016. In no uncertain terms, this Court has held: "In actions for declaratory judgment that challenge

the constitutionality of a statute, our law follows the general rule that *notice to the Attorney General is mandatory*." *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 507 (Mo. banc 1991) (emphasis added); *Land Clearance for Redev. Auth. of City of St. Louis v. City of St. Louis*, 270 S.W.2d 58, 63 (Mo. banc 1954) ("According to the weight of authority, the statutory requirement that the Attorney General be served with notice in cases challenging the constitutionality of a statute and brought under the Declaratory Judgments Act is mandatory."). Nevertheless, this Court took the curious step in *Land Clearance* to excuse the failure to provide notice on the basis that "none of the parties ha[d] raised any objection to the failure to serve the Attorney General." *Id.* at 64. Overlooking the failure to provide notice is at odds with the rule and statute.

I would posit the correct course of action here would be to require notice to the attorney general in the circuit court before the circuit court can enter judgment. As recognized in another jurisdiction utilizing the Uniform Declaratory Judgment Act:

> [S]ervice on the Attorney General in an action seeking a declaration that a statute is unconstitutional is a *condition precedent to the trial court's proceeding to final disposition of the case*. To hold otherwise would not only ignore the clear mandate of the statute, but would render that section meaningless. The legislature clearly provided that the Attorney General is entitled to notice and an opportunity to be heard before the trial court decides a case brought under the Declaratory Judgments Act challenging the constitutionality of a statute, charter, ordinance or franchise. The only way to carry out that mandate is to enforce it.

*Warren v. City of Canby*, 641 P.2d 615, 617 (Or. App. 1982) (emphasis added); *see also Meier v. Schooley*, 363 P.2d 653, 654 (Colo. 1961) ("It is apparent that the essential conditions required by the rule are not shown by the record before us to be present. Under

such circumstances a determination of the questions argued by counsel cannot be had in this proceeding.").

Given the timing in this case, I recognize the futility in a remand to the circuit court. But I cannot support reaching the merits and rejecting Young's constitutional claim without the presence of a required step in the process for declaratory relief.

_____
Robin Ransom, Judge